HERMAN A. KOLLMAR AND EMMA F. KOLLMAR, HUSBAND AND WIFE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 3056.    Promulgated February 5, 1945.

*Mahlon B. Doing, Esq.*, and *R. B. Goodell, Esq.*, for the petitioners.
*Francis S. Gettle, Esq.*, for the respondent.

728

OPINION.

HARRON, *Judge*: The question in this proceeding is whether the sum of $95,000 received by petitioner in the taxable year is exempt from tax under the provisions of section 116 (a) of the Internal Revenue Code [1] in effect during the taxable year. (This section was amended by section 148 of the Revenue Act of 1942.) Respondent contends that section 116 (a) is inapplicable under the facts of this proceeding. He concedes that petitioner was a citizen of the United States and a bona fide nonresident of the United States for more than six months during the taxable year, but denies that the $95,000 was earned income or was received from sources without the United States.

Under section 116 (a) it is a prerequisite to exemption that the amounts received from sources without the United States shall constitute earned income as defined in section 25 (a) (4) (A) of the code, in effect during the taxable year. That section defines earned income as "wages, salaries, professional fees, and other amounts received as compensation for personal services actually rendered * * *." We have found as a fact that the $95,000 was received by petitioner as compensation for personal services actually rendered. The record adequately supports this finding. In fact, there is no evidence in the record to the contrary. However, respondent argues that the $95,000 was received by petitioner as a profit from participating in a joint venture and that profits from a joint venture can not constitute earned income. We have not found it necessary to determine whether such profits may constitute earned income either in whole or in part, since we have found as a fact that there was no joint venture between petitioner and Gottlieb and Romney. When petitioner left for Europe on August 1, 1940, he had no commitments with either Gottlieb or Romney. He merely placed himself at the disposal of these individuals if any business might arise. Since Gottlieb and Romney anticipated the possibility of the sale of the bonds and they were unable to negotiate with the authorities in Germany, they agreed to pay petitioner for his services in Germany in the event of a profitable sale. However, petitioner did not agree to put any of his own money in the transaction or to pledge his credit, and in fact he did not do so. He was not connected in any way with Transfer Trust Ltd. and his only

---

[1] SEC. 116. EXCLUSIONS FROM GROSS INCOME.

In addition to the items specified in section 22 (b) the following items shall not be included in gross income and shall be exempt from taxation under this chapter:

(a) EARNED INCOME FROM SOURCES WITHOUT UNITED STATES.—In the case of an individual citizen of the United States, a bona fide nonresident of the United States for more than six months during the taxable year, amounts received from sources without the United States (except amounts paid by the United States or any agency thereof) if such amounts would constitute earned income as defined in section 25 (a) if received from sources within the United States; but such individual shall not be allowed as a deduction from his gross income any deductions properly allocable to or chargeable against amounts excluded from gross income under this subsection.

agreement was to use his best efforts to promote the sale of the debentures if he were so instructed by cable from New York. From the testimony, it is not apparent how Gottlieb and Romney profited from the transaction. The bonds were sold by the General Electric Corporation to Siemens & Halske A. G. It may be that the profit derived by Gottlieb and Romney was in the nature of a broker's commission. Petitioner testified that he did not know any of the details of the transaction, nor did he know how the amount of $95,000 was determined. Since he considered this amount sufficient for his services, he did not question Gottlieb and Romney as to the profits made on the transaction. His uncontroverted testimony was that the $95,000 was paid to him for his personal services in Berlin in contacting and negotiating with the financial officials of Siemens & Halske A. G., the German Reichsbank, and several other German banks. His services were valuable and extended over a period of almost two months. He was the only American banker in Berlin at that time who could adequately handle negotiations of that nature. We think it clear that the $95,000 was paid to him as compensation for his personal services in Berlin. The payment for those services constituted earned income under the statute.

Respondent also argues that petitioner has failed to establish that the $95,000 was received from sources without the United States. As support for his argument, respondent points to the fact that Gottlieb and Romney were located in New York City and that the $95,000 was paid into petitioner's account with the National City Bank in New York City. However, this argument is entirely inconsistent with respondent's prior rulings. He has consistently held that, in determining whether compensation is from sources within or "without the United States," the place where the services are performed and not the place where the compensation is paid is the controlling factor. See I. T. 2293, C. B. V–2, p. 33; I. T. 2286, C. B. V–1, p. 52; S. M. 5488, C. B. V–1, p. 51; and S. M. 5446, C. B. V–1, p. 49. See also Regulations 103, sec. 19.119–4. These rulings are in accord with section 119 (c) (3) of the code,[2] in effect during the taxable year.

Respondent's final argument is that if it should be held that the $95,000 was paid to petitioner for personal services and is earned income as defined in section 25 (a) (4) (A) of the code, in effect during the taxable year, a proportionate part of such compensation should be treated as income from sources within the United States. This argument is predicated on respondent's assumption that petitioner per-

---

[2] SEC. 119. INCOME FROM SOURCES WITHIN UNITED STATES.

\* \* \* \* \* \*

(c) GROSS INCOME FROM SOURCES WITHOUT UNITED STATES.—The fo'lowing items of gross income shall be treated as income from sources without the United States;

\* \* \* \* \* \* \*

(3) Compensation for labor or personal services performed without the United States;

formed some services in the United States. However, the facts are otherwise. All of petitioner's services in connection with the sale of the debentures were performed in Germany. The fact that during the course of his negotiations he sent cablegrams to New York does not mean that he performed any services in New York. Respondent's determination on this issue is reversed. Petitioner claims that he has overpaid his tax.

Accordingly,

*Decision will be entered under Rule 50.*